UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| JIM BASS HOLDEN,<br><br>Plaintiff,<br>v.<br><br>STATE OF NEVADA EX REL NEVADA DEPARTMENT OF CORRECTIONS, *et al.*,<br><br>Defendants. | Case No. 3:16-cv-00064-MMD-WGC<br><br>ORDER |

## I.   SUMMARY

Plaintiff Jim Bass Holden alleges violations of his Eighth Amendment rights in connection with a diagnosis of skin cancer he received while in the custody of the Nevada Department of Corrections ("NDOC"). Before the Court is the Report and Recommendation ("R&R" or "Recommendation") of Magistrate Judge William G. Cobb (ECF No. 87) relating to Defendants' motion for summary judgment (ECF No. 78). Plaintiff filed an objection ("Plainitff's Objection") (ECF No. 88), as did Defendants Romeo Aranas, Isidro Baca, Robert Bannister, James Cox, Pamela Del Porto, William Donnelly, Timothy Filson, Ted Hanf, Jerry Howell, Adam Laxalt, E.K. McDaniel, Jennifer Nash, Dwight Neven, Brian Sandoval, Charles Schardin, and Harold Wickham (collectively, "Defendants") (ECF No. 90) ("Defendants' Objection").[1] The Court has reviewed the

---

[1] Plaintiff names the following additional Defendants who have not been served: Cegavske, Henson, Hipkin, Morrow, Stroud, and Holmes. (ECF No. 58.) The Attorney General's Office did not accept service for Cegavske, Henson, Hipkin, Morrow, or Stroud. *(fn. cont…)*

parties' respective responses (ECF Nos. 91, 92). For the following reasons, the Court overrules Defendants' Objection in its entirety and sustains in part and overrules in part Plaintiff's Objection.

## II. BACKGROUND

### A. Relevant Facts

The following facts come from Defendants' statement of undisputed material facts (ECF No. 78 at 1-5) unless otherwise indicated.

During the times relevant to this action, Plaintiff was incarcerated at High Desert State Prison ("HDSP") in administrative segregation. (*Id.* at 2.) At HDSP, Plaintiff was permitted recreation time in outdoor recreation cages with no shade for one to three hours a day. (*See id.*; ECF No. 58 at 7.) Plaintiff alleges that he is highly susceptible to skin cancer because he has fair skin, blond hair, blue eyes, and freckles. (ECF No. 78 at 2 (citing ECF No. 58 at 6).) Plaintiff attempted to purchase sunscreen through the prison store at HDSP but was unsuccessful because the sunscreen came in a plastic squeeze bottle that was not permitted in administrative segregation. (*Id.*) Plaintiff submitted kites to HDSP's medical department requesting sunscreen, but the medical department referred him back to the prison store. (*Id.* at 3.)

Plaintiff noticed that his moles and freckles were changing, and he requested an examination on June 14, 2011. (*Id.*) A nurse briefly examined him, and Plaintiff requested to be seen by a doctor instead of a nurse. (*Id.*) Defendant Hanf, a medical doctor at HDSP, visually examined Plaintiff and concluded that Plaintiff's skin lesions were not cancerous. (*Id.*)

Plaintiff requested another examination in August or September 2014 when he noticed that one of his moles turned black and others were changing in shape and size. (*Id.*) Dr. Holmes examined lesions on Plaintiff's right side, left arm, and left ear. (*Id.* at 3-

///

---

(ECF No. 61.) In addition, Holmes was not timely served with Plaintiff's Second Amended Complaint. (ECF No. 87 at 3.) The Court addresses dismissal of these Defendants *infra* section IV(E).

2

4.) Dr. Holmes diagnosed the lesion on Plaintiff's ear as basal cell carcinoma ("BCC"), a form of skin cancer. (*Id.* at 4.)

Plaintiff filed the only grievance (and related appeals) relevant to this action on January 7, 2015. (*Id.*) Therein, Plaintiff detailed the history of his interactions with NDOC staff related to his skin cancer and requested biopsy of all suspect moles/lesions, tests and treatment, and compensation for his stress. (ECF No. 78-4 at 2-4.) NDOC staff denied Plaintiff's grievance on April 8, 2015, because Plaintiff had already received biopsies on two separate dates. (ECF No. 78 at 4.)

Plaintiff appealed the denial by submitting a first level grievance on May 4, 2015. (*Id.*) Plaintiff then submitted a second level grievance on July 21, 2015, even though he had not yet received a response to his first level grievance. (*Id.*) NDOC denied Plaintiff's first level grievance on September 1, 2015, and Plaintiff filed an additional second level grievance on October 13, 2015. (*Id.*)

Plaintiff received another examination on February 4, 2015, by Defendant Aranas. (*Id.* at 4-5.) Aranas ordered surgery to biopsy the skin lesions on Plaintiff's left ear and his side. (*Id.* at 5.) Aranas examined lesions on Plaintiff's left arm and diagnosed them as sun spots. (*Id.*) Lab results from the biopsies showed that the lesion on Plaintiff's ear was BCC, and the lesion on Plaintiff's side was non-malignant. (*Id.*) Lab results from Plaintiff's subsequent biopsies showed that none of the other lesions were cancerous. (*Id.*)

Plaintiff received another examination on April 29, 2015, by Defendant Hipkin. (*Id.*) Defendant Hipkin concluded that some cancerous cells remained on Plaintiff's ear and prescribed a cream to inflame the cancer and make it more identifiable for removal. (*Id.*)

Plaintiff received another examination on July 29, 2015, by Defendant Donnelly. (*Id.*) Defendant Donnelly prescribed Plaintiff sunscreen. (*Id.*)

Plaintiff underwent a second surgery on his ear by Dr. King, an NDOC consultant, sometime after September 3, 2015. (*See id.*) Dr. King determined that Plaintiff had an excellent result. (*Id.*)

///

Plaintiff filed his First Amended Complaint ("FAC") on March 4, 2016, as a *pro se* litigant. (ECF No. 3.) Plaintiff later retained counsel, who filed a Second Amended Complaint ("SAC") on his behalf. (ECF No. 58.) The SAC names the following Defendants: HDSP Warden Dwight Neven, HDSP Associate Warden Timothy Filson, NDOC Director James G. Cox, NDOC Deputy Director E.K. McDaniel, HDSP Associate Warden Isidro Baca, HDSP Associate Warden Bruce D. Stroud, HDSP Associate Warden Jennifer S. Nash, HDSP Associate Warden Cole T. Morrow, HDSP Associate Warden Jerry L. Howell, HDSP Associate Warden Harold J. Wickham, HDSP Associate Warden James S. Henson, Commissioner on the Nevada Board of State Prison Commissioners (NBPC) Brian Sandoval (official capacity only), NBPC Commissioner Barbara Cegavske (official capacity only), NBPC Commissioner Adam Laxalt (official capacity only), NDOC Medical Director R. Bruce Bannister, NDOC Senior Physician and/or NDOC Medical Director Romeo Aranas, NDOC Physician James E. Holmes, NDOC Physician Ted D. Hanf, NDOC Physician David Hipkin, and NDOC Physician William Donnelly. (*Id.* at 2-4.) The SAC asserts eight counts of deliberate indifference arising under the Eighth Amendment to the United States Constitution and Article 1, Section 6 of the Nevada Constitution. (*Id.* at 13-20.)

**B.     Judge Cobb's Report and Recommendation**

Judge Cobb recommended granting summary judgment in favor of Defendants on exhaustion grounds with respect to Counts I, II, III, VI, VII, and VIII. (ECF No. 87 at 39.) Judge Cobb further recommended granting summary judgment in favor of Defendants on the portion of Count IV predicated on Hanf's failure to order a biopsy or other testing. (*Id.*)

Judge Cobb recommended denying summary judgment as to Count V and the portion of Count IV predicated on Hanf's alleged failure to prescribe sunscreen. (*Id.*) Judge Cobb also found that qualified immunity did not apply. (*Id.* at 39-40.)

The parties do not object to Magistrate Judge Cobb's recommendation to deny summary judgment as to Count V, nor do they object to Magistrate Judge Cobb's findings

///

4

regarding qualified immunity. (*See* ECF Nos. 88, 90.) The Court will accordingly adopt these recommendations.

### III. LEGAL STANDARDS

#### A. Review of the Magistrate Judge's Recommendations

This Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). Where a party timely objects to a magistrate judge's report and recommendation, then the court is required to "make a *de novo* determination of those portions of the [report and recommendation] to which objection is made." *Id.* Where a party fails to object, however, the court is not required to conduct "any review at all . . . of any issue that is not the subject of an objection." *Thomas v. Arn*, 474 U.S. 140, 149 (1985). Indeed, the Ninth Circuit has recognized that a district court is not required to review a magistrate judge's report and recommendation where no objections have been filed. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (disregarding the standard of review employed by the district court when reviewing a report and recommendation to which no objections were made); *see also Schmidt v. Johnstone*, 263 F. Supp. 2d 1219, 1226 (D. Ariz. 2003) (reading the Ninth Circuit's decision in *Reyna-Tapia* as adopting the view that district courts are not required to review "any issue that is not the subject of an objection"). Thus, if there is no objection to a magistrate judge's recommendation, then the court may accept the recommendation without review. *See, e.g.*, *Johnstone*, 263 F. Supp. 2d at 1226 (accepting, without review, a magistrate judge's recommendation to which no objection was filed).

#### B. Summary Judgment Standard

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits "show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of

law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact-finder could find for the nonmoving party and a dispute is "material" if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *See id.* at 250-51. "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (*quoting First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968)). In evaluating a summary judgment motion, a court views all facts and draws all inferences in the light most favorable to the nonmoving party. *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

The moving party bears the burden of showing that there are no genuine issues of material fact. *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982). Once the moving party satisfies Rule 56's requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Orr v. Bank of Am.*, 285 F.3d 764, 783 (9th Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252.

**IV. PLAINTIFF'S OBJECTION (ECF NO. 88)**

Plaintiff makes five objections to Judge Cobb's R&R. The Court will overrule the first and fourth objections and sustain the second, third, and fifth objections.

///

### A. First Objection

Plaintiff's first objection is that he should not be required to exhaust claims discovered and brought by his attorney in his SAC. (ECF No. 88 at 2.) In support of his position, Plaintiff makes the following points: (1) representation obviates the risk of frivolous claims; (2) the PLRA distinguishes between represented and *pro se* inmates; (3) applying the PLRA to represented inmates inhibits counsel's ability to provide representation; and (4) grievance procedures are effectively unavailable to an attorney representing an inmate. (*Id.* at 3-7.) The Court finds all of these arguments unpersuasive because the plain language of the PLRA unambiguously requires inmates to exhaust administrative remedies, regardless of whether they are represented by counsel. *See* 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.").

#### 1. Risk of Frivolous Claims

Plaintiff argues that Congress did not intend for the PLRA's exhaustion requirement to apply to claims brought by represented inmates because "the sole purpose to the PLRA was to somehow control the flow of frivolous lawsuits being filed by pro se prisoners." (ECF No. 88 at 4.) Defendants respond that the PLRA has another purpose—to protect prisons' authority by allowing them to correct their own mistakes before being haled into court. (ECF No. 92 at 5.) Defendants argue that Plaintiff's approach "would undermine the authority of prison officials and deprive them of the opportunity to correct any mistakes in their programs or internally manage prisoners' complaints." (*Id.*) The Court agrees with Defendants. *See Jones v. Bock*, 549 U.S. 199, 204 (2007) ("Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court.").

///

///

### 2.    Differentiation Between Represented and *Pro Se* Litigants

Plaintiff further argues that Congress did not intend for the PLRA's exhaustion requirement to apply to claims brought by represented inmates because 28 U.S.C. § 1915A only requires screening of *pro se* prisoner complaints. (ECF No. 88 at 5-6.) Defendants respond that "nothing in the language of the PLRA or in any case law supports extending that alleged differentiation to the exhaustion requirement of the PLRA." (ECF No. 92 at 8.) The Court agrees with Defendants—the screening requirements of the PLRA are irrelevant to the exhaustion requirement. Moreover, Plaintiff's argument could support the contrary view. Congress's failure to expressly distinguish between exhaustion requirements for represented litigants and exhaustion requirements for *pro se* litigants could suggest that Congress intended the exhaustion requirement to apply equally to both.

### 3.    Counsel's Ability to Provide Representation

Plaintiff further argues that Congress did not intend for the PLRA's exhaustion requirement to apply to claims brought by represented inmates because it "deprives their attorneys of the opportunity to bring legitimate claims before the Court." (ECF No. 88 at 6.) Defendants respond that even if this is true, the plain language of the statute requires exhaustion. (*See* ECF No. 92 at 9.) The Court agrees with Defendants. Moreover, Plaintiff's argument would apply to any procedural rule that operates to bar a claim from being heard on its merits.

### 4.    Availability of Grievance Procedures

Plaintiff further argues that Congress did not intend for the PLRA's exhaustion requirement to apply to claims brought by represented inmates because "Nevada attorneys have no means of accessing the NDOC grievance process for the purpose of exhausting administrative remedies on behalf of their prisoner clients prior to bringing suit or amending complaints." (ECF No. 88 at 7.) Defendants respond that the grievance procedures were available to Plaintiff even if they were not directly available to his attorney. (ECF No. 92 at 10.) The Court agrees with Defendants—the grievance procedure

///

was available to Plaintiff. Plaintiff cites no authority requiring grievance procedures also to be made directly available to inmates' lawyers.

Accordingly, the Court will overrule Plaintiff's first objection.

**B.     Second Objection**

Magistrate Judge Cobb found that Plaintiff failed to exhaust his administrative remedies regarding his claims in Counts I, II, and III related to the uncovered recreation cages at HDSP and availability of sunscreen at NDOC because Plaintiff failed to raise these issues in his informal grievance. (ECF No. 87 at 18.) Plaintiff objects, arguing that he exhausted his administrative remedies because his first and second level grievances raised these issues and prison officials generally responded on the merits to these grievances rather than asserting a procedural bar (such as Plaintiff's failure to grieve one issue per form as is required by AR 740.03(4)(D)). (ECF No. 88 at 10 (citing *Reyes v. Smith*, 810 F.3d 654, 657 (9th Cir. 2016); ECF No. 78-8 at 5.) Defendants argue that the responses to the first and second level grievances did not address Plaintiff's concerns regarding the recreation cage and sunscreen policies on the merits and were instead addressed solely to the issue Plaintiff raised in his informal grievance preceding the first and second level grievances—his claim against Defendant Hanf. (ECF No. 92 at 12-13.)

Plaintiff relies on the Ninth Circuit's decision in *Reyes*, 810 F.3d 654, to support his argument. There, the Ninth Circuit held "that a prisoner exhausts 'such administrative remedies as are available,' 42 U.S.C. § 1997e(a), under the PLRA despite failing to comply with a procedural rule if prison officials ignore the procedural problem and render a decision on the merits of the grievance at each available step of the administrative process." *Id.* at 658. Defendants argue that *Reyes* is distinguishable because "NDOC properly responded to [Plaintiff's] informal grievance." (ECF No. 92 at 12.) However, the propriety of the response is not at issue—what matters is whether prison officials ignored procedural problems with Plaintiff's grievance and responded on the merits. *See Reyes*, 810 F.3d at 658; *see also Watts v. Nguyen*, 671 F. App'x 444 (9th Cir. 2016) (remanding case to district court to determine whether inmate-plaintiff exhausted administrative

remedies when he raised new issues in a grievance appeal and prison officials considered the merits despite the inclusion of new issues).[2] Consequently, the Court will consider whether NDOC ignored procedural problems and responded to Plaintiff's grievance regarding the sunscreen and recreation cage issues on the merits. An "on the merits" adjudication is one that passes directly on the substance of a particular claim before the court. *Wilson v. Zubiate*, 718 F. App'x 479, 481 (9th Cir. 2017) (quoting *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 501-02 (2001)).

In his informal grievance, Plaintiff essentially grieved a lack of treatment for skin cancer, detailing the efforts he had gone through to obtain an accurate diagnosis and corresponding treatment. (ECF No. 78-4 at 4.) NDOC responded: "Since the date of this grievance, you have had two procedures in the Medical Building: 2/17/15 and 3/19/15. If your condition changes or worsens, please submit a medical request to be placed on Doctor Sick Call. Grievance resolved." (ECF No. 78-4 at 5.)

In his first level grievance, Plaintiff asserted that he asked for sunscreen and was told to buy sunscreen at the prison store even though he could not purchase it because it was in a squeeze bottle. (ECF No. 78-4 at 6-7.) Plaintiff also asserted that he was unable to seek shade because the recreation cages did not have a covering. (*See id.* at 7.) The response to the first level grievance did not expressly address Plaintiff's assertion about the lack of shade in the recreation cages, but it did address the sunscreen issue: "You have a current order for Sun-screen and signed receiving it on 7/5/15 and 8/14/15." (*Id.* at 9.) The response did not assert a procedural bar to the sunscreen or recreation cage issues. (*See id.*)

In his second level grievance, Plaintiff attached a timeline of his medical issues that again discussed the sunscreen and recreation cage issues. (*Id.* at 15.) The response to the second level grievance stated "Mr. Holden, You are now housed at NNCC. You had

///

---

[2]The district court did not have an opportunity to decide the question because the action was dismissed when the plaintiff failed to comply with certain court orders. *See Watts v. Nguyen*, No. 1:13-cv-00917-AWI-SKO, ECF No. 66 (E.D. Cal. Sept. 18, 2017).

10

surgery on 12/29/15 to remove the basal cell carcinoma from the left ear. Follow up is scheduled." (ECF No. 78-2 at 5 (entry dated 02/04/2016).)

The grievances and responses show that prison officials entirely ignored any procedural problems they now raise regarding Plaintiff's grievances. Prison officials responded to Plaintiff's grievances without any apparent consideration of whether those grievances were timely. In addition, prison officials did not decline to address the sunscreen and recreation cage issues on the ground that those issues lay outside the scope of the informal grievance.

Prison officials also rendered a decision on the merits of Plaintiff's concerns regarding sunscreen and the recreation cages at each available step of the administrative process. First, Plaintiff's grievances contemplated the sunscreen and recreation cage issues. Plaintiff's first and second level grievances expressly stated his concerns regarding sunscreen and the recreation cages. (*See* ECF No. 78-4 at 6-7, 15.) While Plaintiff's informal grievance did not expressly contemplate the sunscreen and recreation cage issues, it impliedly encompassed those issues. In his informal grievance, Plaintiff complained of problems obtaining a diagnosis and treatment of his skin cancer. (*See id.* at 4.) Essentially, Plaintiff complained of the prison's failure to address his medical needs, and prevention (i.e., sunscreen and shade) is a means of addressing medical needs. *See Simmons v. Navajo Cty., Ariz.*, 609 F.3d 1011, 1017 (9th Cir. 2010) (quoting *Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1243-44 (9th Cir. 2010)) ("We have long analyzed claims that correction facility officials violated pretrial detainees' constitutional rights by failing to address their medical needs (including suicide prevention) under a 'deliberate indifference' standard."). Thus, the informal grievance, and especially the first and second level grievances, "alert[ed] the prison to the nature of the wrong for which redress [was] sought." *Griffin v. Arpaio*, 557 F.3d 1117, 1120 (9th Cir. 2009) (quoting *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002)). Furthermore, construing the facts in the light most favorable to Plaintiff and drawing all inferences in his favor, the prison officials' failure to object to Plaintiff's concerns about sunscreen and the recreation cages on the ground that

those issues lay outside the scope of Plaintiff's informal grievance suggests that they understood Plaintiff's informal grievance as encompassing Plaintiff's concerns about shade and sunscreen.

Second, prison officials' responses constituted on-the-merits adjudication of Plaintiff's concerns. In response to Plaintiff's informal grievance, prison officials stated that he had received two medical procedures. (ECF No. 78-4 at 5.) In response to Plaintiff's first level grievance, prison officials stated that he had sunscreen, had seen an NDOC Senior Physician, and would be "closely monitored." (*Id.* at 9.) In response to Plaintiff's second level grievance, prison officials stated that he had surgery. (*Id.* at 5.) While these responses did not expressly address the recreation cage issue, they addressed the most salient issue—Plaintiff's skin cancer—which in itself subsumes the sunscreen and recreation cage issues that allegedly led to his skin cancer. In addition, to the extent that the responses did not atomistically address every point raised in Plaintiff's grievances, imposing such a requirement would transform the PLRA's exhaustion requirement into a virtually insurmountable barrier to the federal courts. It is implausible that a prison official's response to a grievance would ever approach the level of detail that would constitute an "on-the-merits" adjudication like that provided by federal courts. Moreover, to the extent that the prison officials failed to respond to Plaintiff's concerns regarding sunscreen and shade "on the merits" in their response to the informal grievance, *Reyes* only requires exhaustion at each "available step." 810 F.3d at 658. After Plaintiff made his informal grievance regarding his skin cancer diagnosis and treatment, the informal grievance level was no longer available to him as prison officials might have rejected a separate informal grievance regarding the sunscreen and recreation cage issues as duplicative of his pending grievance. (*See* ECF No. 78-8 at 5 (containing text of AR 740.03(4)(E): "Grievances that grieve the same issue in a previously filed grievance will be screened out as a duplicate issue, which is already being considered or has been considered and responded to.").)

///

Finally, the grievances and responses served the purposes of the PLRA's exhaustion requirement. Prison officials had a fair opportunity to correct the sunscreen policy and lack of shade in the recreation cages (but took no action), and an administrative record regarding these issues came into being. *See Reyes*, 810 F.3d at 658 (9th Cir. 2016). Dismissing Plaintiff's claim for failure to exhaust would not advance the statutory goal of avoiding unnecessary interference in prison administration and would instead prevent the Court from considering claims that have already been fully vetted within the prison system. *See id.*

Accordingly, the Court will sustain Plaintiff's second objection.

**C.     Third Objection**

Magistrate Judge Cobb recommended summary judgment for Defendant Aranas in Count VI, Defendant Hipkin in Count VII, and Defendant Donnelly in Count VIII because Plaintiff failed to adequately grieve issues regarding these Defendants' respective conduct. (ECF No. 87 at 24-27.) Plaintiff argues that he successfully exhausted in light of prison officials' response on the merits to these issues in his first and second level grievances. (ECF No. 88 at 11.) Defendants do not specifically address this argument. (*See* ECF No. 92 at 11-13.)

Plaintiff discussed each of these Defendants in his second level grievance:

> I was fine until I filed a grievance at which point biopsies were finally done proving I was <u>not</u> fine. Doctor Aran[a]s at HDSP even tried to convince me the spot on my left arm was only a "sun spot" and I should not worry about it and now it[']s not just one spot on my arm there are 4 but hey it[']s just a "sun spot." Doctor Hipkin at LCC was at least trying to help. He prescribed me Imiquimod 5% and said it would inflame the cancer so all of it could easily be seen so it could be removed, then on 6-29-15 I seen [sic] Doctor Donnelly for sunblock and I let him see my left arm and left ear. Donnelly said I was fine and that nothing needed to be done. Even the biopsy report said not all of the cancer had been removed from my left ear.

(ECF No. 78-4 at 11-12.)

Plaintiff also discussed the conduct of each of these Defendants in an eight-page timeline he attached to his second-level grievance. Regarding Defendant Aranas, Plaintiff wrote: "I was seen by Doctor Aran[a]s. He scheduled biopsies on my right side and left

13

ear. I also asked him about the red spot on my left arm. His response was 'it's only a sunspot don[']t worry about it.' I tried to explain that it changes but he insisted it was no worry being a sunspot." (*Id.* at 17.) Regarding Defendant Hipkin, Plaintiff wrote: "Doctor Hipkin told me that not all of the cancer had been removed from my left ear." (*Id.* at 18.) Regarding Defendant Donnelly, Plaintiff wrote: "While at medical I pointed out the open sores of [basal cell carcinoma] on my left arm and left ear to Doctor Donnelly (L.C.C.) his response was [I']m fine and he will not remove the rest of the cancer in my left ear or biopsy my left arm." (*Id.* at 19.)

NDOC's response to the second level grievance stated "Mr. Holden, You are now housed at NNCC. You had surgery on 12/29/15 to remove the basal cell carcinoma from the left ear. Follow up is scheduled." (ECF No. 78-2 at 5 (entry dated 02/04/2016).) The Court finds that Plaintiff exhausted his administrative remedies based on *Reyes*, 810 F.3d 654. In *Reyes*, the Ninth Circuit found that an inmate-plaintiff exhausted administrative remedies even though his grievance did not name all staff members involved in his case because prison officials addressed the merits of his grievance rather than enforcing a procedural bar. *Id.* at 657-58. Just like the plaintiff in *Reyes*, Plaintiff failed to name certain individuals in some of his grievances, but NDOC officials responded to Plaintiff's grievance on the merits and did not assert a procedural bar. Thus, Magistrate Judge Cobb erred in finding that Plaintiff failed to exhaust these claims.

Accordingly, the Court will sustain Plaintiff's third objection and deny summary judgment on Counts VI, VII, and VIII.

### D. Fourth Objection

Magistrate Judge Cobb recommended granting summary judgment in favor of Defendant Hanf on the portion of Count IV regarding Hanf's purported failure to order a biopsy or other testing. (ECF No. 87 at 32.) Magistrate Judge Cobb reasoned that Hanf's failure to order a biopsy or other testing did not amount to deliberate indifference and was, at most, medical malpractice because Hanf simply exercised his medical judgment. (*Id.* at 33.) Plaintiff objects, arguing that Hanf acted in conscious disregard of excessive risks to

14

Plaintiff's health by forgoing a biopsy and advising Plaintiff to monitor his own skin for signs of cancer. (*See* ECF No. 88 at 13-14.) Defendants respond that Hanf did not disregard an excessive risk to Plaintiff's health because none of Plaintiff's skin lesions/moles had changed color (and the mole on his ear had not developed) when Dr. Hanf examined Plaintiff. (ECF No. 92 at 13.) Defendants further argue that Plaintiff has not presented any evidence to demonstrate that Dr. Hanf should have done anything other than visually examine him or that his skin lesions/moles were actually cancerous at the time Dr. Hanf examined him. (*Id.* at 14.)

Plaintiff seemingly advances a claim for denial of medical treatment. An inmate challenging denial of treatment must allege that the denial "was medically unacceptable under the circumstances," and made "in conscious disregard of an excessive risk to [the inmate]'s health." *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996). The Court agrees with Defendants that Plaintiff has failed to offer any evidence to show that Hanf's decision to forgo a biopsy was medically unacceptable under the circumstances and made in conscious disregard of an excessive risk to Plaintiff's health. Plaintiff has made no factual showing that Hanf was unqualified to visually assess Plaintiff for skin cancer. While Hanf's conduct may have been negligent, such negligence would be insufficient to ground Plaintiff's claim of deliberate indifference. *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds by *WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997)) ("Mere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights.").

Accordingly, the Court will overrule Plaintiff's fourth objection.

### E. Fifth Objection

Magistrate Judge Cobb recommended that Defendants Cegavske, Henson, Hipkin, Morrow, Stroud, and Holmes be dismissed pursuant to Fed. R. Civ. P. 4(m) and further recommended that the dismissal of Cegavske, Henson, Hipkin, Morrow, and Stroud be with prejudice because Plaintiff failed to exhaust his administrative remedies for his claims

against them. (ECF No. 87 at 3.) Plaintiff objects that dismissal should be without prejudice as to any unserved defendants. (ECF No. 88 at 14.) Defendants have not addressed this argument. (*See* ECF No. 92.) The Court agrees with Plaintiff that dismissal should be without prejudice for these Defendants. Plaintiff did not fail to exhaust his administrative remedies with respect to Counts I, II, and III, which name Cegavske, Henson, Morrow, and Stroud as Defendants. In addition, Plaintiff did not fail to exhaust administrative remedies with respect to Counts V and VII, which name Holmes and Hipkin as Defendants.

Accordingly, the Court will sustain Plaintiff's fifth objection and dismiss Defendants Cegavske, Henson, Hipkin, Morrow, Stroud, and Holmes without prejudice for failure to effect service of process.

**V.   DEFENDANTS' OBJECTION (ECF NO. 90)**

Defendants make two objections to the R&R. The Court will overrule both.

**A.   First Objection**

Magistrate Judge Cobb found that Plaintiff's informal grievance sufficiently put prison officials on notice of Hanf's failure to prescribe sunscreen (one basis of Count IV of Plaintiff's SAC). (ECF No. 87 at 21-22; ECF No. 58 at 17.) Defendants object, arguing that the allegations in the informal grievance and SAC regarding sunscreen differ significantly, such that the informal grievance did not put the prison on notice of Plaintiff's claim in his SAC. (ECF No. 90 at 7.) Plaintiff responds that even if his informal grievance did not put prison officials on notice of the issue, his first level grievance did. And given that the prison failed to invoke its procedural rules and instead addressed his concern about Hanf's failure to prescribe sunscreen on its merits, the prison's exhaustion argument is moot. (ECF No. 91 at 3.)

The Court agrees with Plaintiff. Plaintiff's first level grievance stated: "As you can see by reviewing the dates in my medical file that I started this process while at HDSP . . . by asking for sunscreen." (ECF No. 78-4 at 6.) Read in conjunction with Plaintiff's informal grievance, which identified Hanf as a treating physician (s*ee id.* at 2), the grievance procedure put prison officials on notice that Hanf had failed to prescribe

1 sunscreen. Even if Plaintiff's grievance was procedurally flawed, prison officials failed to
2 raise any procedural bar and instead responded to Plaintiff's first level grievance on the
3 merits: "You have a current order for Sun-screen and signed receiving it on 7/5/15 and
4 8/14/15." (*Id.* at 9.) As a result, Plaintiff exhausted his administrative remedies with respect
5 to Hanf's failure to prescribe sunscreen. *See Reyes*, 810 F.3d at 658.

Accordingly, the Court will overrule Defendants' first objection.

### B. Second Objection

Magistrate Judge Cobb determined that Plaintiff's informal grievance on January 7, 2015, timely grieved Dr. Hanf's failure to prescribe sunscreen. (ECF No. 87 at 22-24.) Magistrate Judge Cobb reasoned that Plaintiff's claims against Dr. Hanf did not accrue until December 2014, when Defendant Holmes confirmed to Plaintiff that he likely had developed a form of skin cancer. (*Id.* at 23.) Defendants argue that the informal grievance is untimely because administrative regulations require grievances to be filed within six months of the alleged violation or injury. (ECF No. 90 at 10.) Plaintiff argues that his grievance was denied on its merits and never rejected as being untimely. (ECF No. 91 at 5.) The Court agrees with Plaintiff. Prison officials did not deny Plaintiff's grievance because it was untimely. Instead, they considered the grievance on its merits. Thus, the purposes of exhaustion were served—prison officials were on notice of the problem and had an opportunity to correct it. In addition, an administrative record was established through the grievance process.

Accordingly, the Court will overrule Defendants' second objection.

### VI. CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the motions before the Court.

///

///

It is therefore ordered that the Magistrate Judge's Report and Recommendation (ECF No. 87) is accepted in part and rejected in part. Defendant's motion for summary judgment (ECF No. 78) is granted in part and denied in part.

It is further ordered that summary judgment is granted in favor of Defendants on the portion of Count IV related to Hanf's failure to order a biopsy or other testing.

It is further ordered that summary judgment is denied as to Counts I, II, III, V, VI, VII, VIII, and the portion of Count IV related to Hanf's failure to prescribe sunscreen.

It is further ordered that the following Defendants are dismissed without prejudice for failure to effect service of process: Cegavske, Henson, Hipkin, Morrow, Stroud, and Holmes.

It is further ordered that Defendants' motion to extend time (ECF No. 89) is granted *nunc pro tunc*.

DATED THIS 24th day of September 2018.

---
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE